# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs June 26, 2013

## STATE OF TENNESSEE v. JARON LEE GOODSON

**Direct Appeal from the Circuit Court for Blount County**
**No. C-20245     Tammy Harrington, Judge**

**No. E2012-02589-CCA-R3-CD - Filed July 17, 2013**

The defendant, Jaron Lee Goodson, entered an open plea agreement to one count of aggravated sexual battery, a Class B felony. Following a sentencing hearing, the trial court sentenced the defendant to a term of twelve years, at 100%, in the Department of Correction. On appeal, he contends that the trial court erred in determining the length of the sentence. Following review of the record, we affirm the sentence as imposed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and ROGER A. PAGE, JJ., joined.

J. Liddell Kirk (on appeal), Knoxville, Tennessee, and Mack Garner, District Public Defender (at trial), Maryville, Tennessee, for the appellant, Jaron Lee Goodson.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Clinton Frazier, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History and Factual Background

As the defendant failed to include a copy of the guilty plea hearing transcript in the record, the facts underlying his conviction in this case must be gleaned from the pre-sentence reported admitted without defense objection and the testimony at the sentencing hearing. Despite the absence of the plea transcript, we believe that meaningful review may be conducted from the record presented on appeal. *See State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012).

The agency statement contained in the pre-sentence report states as follows:

Police report: On 8-14-11 at 1839, I Corporal Hall responded to the Justice Center and made contact with Cory Presley (complanant) [sic] in reference to a possible sexual battery or rape. Mr. Presley advised this afternoon his girlfriend's best friend told him their six year old said she had been touched by her father.

Upon investigation, Ashley Lanagan (witness) is best friends with Melissa Goodson (guardian) and babysits her children often. This afternoon, Ashley advised she asked [the victim] if she liked visiting her father and she said "no" and said "daddy told me I cannot tell anyone." [The victim] then advised that her daddy [the defendant] puts his boy parts on her girls parts. She then called Melissa and Cory.

I then spoke to Melissa and she advised her and [the defendant] are married, but currently separated. She has allowed him to see [the victim] a couple of times a week for the past few months. At this time it is unclear the exact timeframe when the incidents have occurred, but [the victim] stated it happened at their old house . . . . I questioned if she had seen any visible signs on [the victim] and she said she had not. . . . .

. . . .

Detective Mike Seratt Report: 08/23/2011 I had went to the CAC and met with CPS Erica Manfredi in regards to the interview. We observed an interview with the victim and she disclosed that her step father had sexually touched her vaginal area. She said that this happened more than one time and that he put his private in her private, she called it sex. She said this happened at their house at Cherokee Heights. She said that [the defendant] took her clothes off and she didn't like it.

. . . .

Detective Mike Seratt Report: 08/31/2011: [The defendant] arrived for his polygraph and he met with me along with Lt. Widener in regards to the polygraph. I left and he was explained the examination by the examiner and they administered the test. After the test was given Lt. Widener gave me the results of the polygraph which was that [the defendant] had failed the examination. Lt. Widener had interviewed him and he denied the allegations and then he left the room after several minutes and I along with polygraph

intern Donna Roberts went into the interview room. I began talking with [the defendant] and he denied the allegations then later admitted to putting his finger in [the victim's] vagina after she had been swimming and he then went to the bathroom and masterbated [sic]. He stated that this only happened one time. He continued to deny his penis had been placed in her vagina. I had explained to [the defendant] he would be indicted later and that a no contact order would be placed on him not to be around the victim or his minor child. . . .

Based upon these acts, a Blount County grand jury returned an indictment charging the defendant with rape of a child. Thereafter, the defendant entered an open guilty plea agreement to the charge of aggravated sexual battery. At the sentencing hearing, at which the trial court was to determine only the sentence length, the State presented multiple witnesses in addition to admitting the pre-sentence investigation report into evidence.

The first witness was Detective Mike Seratt of the Blount County Sheriff's Department, who testified regarding his second interview with the defendant. Just as stated in the pre-sentence report, Detective Seratt testified that the defendant admitted that he touched the victim's vaginal area with his finger before going to the bathroom and masturbating. He also testified that, during the interview, the defendant told him that this had only occurred on one occasion and that there was no penile touching or penetration.

The State also called the victim's grandfather, mother, and great-grandmother. The victim's grandfather testified that he and his wife, the victim's grandmother, had had custody of the victim since just after the incident. He indicated that, after the incident, the victim had developed erratic behavior and suffered from nightmares, often waking up screaming. He further testified that if they drove past the place where the defendant was employed or saw a van like he drove, the victim would "freeze[] up" and want to get in the floorboard of the car. He also testified that the victim was seeing a therapist once a week to help her cope with the trauma of the abuse. He testified that he felt the defendant should receive the maximum sentence in order to allow the victim as much time as possible to heal and mature before the defendant was released.

The victim's mother, the defendant's then-wife, read a statement which she had prepared for trial. In the statement, she stated that the defendant had hurt her child "worse than [she]. . . could ever understand." She verified that the victim still suffered nightmares. She also stated that she felt a twelve-year sentence would be best for the victim because it would give her "more time to mature and be able to understand and deal with what [the defendant] had done to her." The victim's great-grandmother also read a statement in which she stated she was advocating for the victim. She stated that the victim had great trust in her stepfather, the defendant, even calling him "Daddy." She also expressed that she felt the

defendant should receive the maximum sentence because he had destroyed the victim's childhood innocence.

The defendant did not testify and presented no proof. However, during the preparation of the pre-sentence report, he gave the following statement to the officer.

> Pre-Sentence Interview: The [defendant] stated he did not do anything to his step-daughter, the six year old victim. He stated he went to a bar and got drunk and went to Melissa's (his wife). They have been separated for "a couple of week."

> He said he got into an argument with a guy who was at Melissa's and she told him to leave, which he did. The next day, detective[]s showed up at his work and asked him to come in for questioning. He later went to do the interview and told Detective Mike Seratt he had touched his step-daughter's vagina one time.

> The [defendant] reported he took a polygraph and when he was asked if he touched the [victim] he told them "No". He then said Detective Seratt told him he failed the polygraph and they had medical evidence against him and . . . that if he did not cooperate with them, would go to jail for twenty-five years. The [defendant] stated he was in the interrogation room for two and a half hours and finally told Detective Seratt he had touched his step-daughter.

After considering all the evidence, the trial court sentenced the defendant to the maximum sentence within his range, twelve years at 100%, to be served in the Department of Correction. The defendant has timely appealed the sentence.

**Analysis**

On appeal, the defendant contends that the trial court abused its discretion by imposing the maximum sentence within the range. Specifically, he contends that "the trial court departed from the purposes and principles of the Sentencing Act in imposing the maximum sentence within the range upon a Defendant with no prior felony record, who had cooperated in the investigation by agreeing to be interviewed, admitting wrongdoing and entering a guilty plea." He argues that the purposes and principles of the Sentencing Act are not served with ordering the maximum sentence in this case.

When an accused challenges the length, range, or manner of service of a sentence, this court will review the trial court's decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This

presumption of reasonableness is granted to "within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id*. at 708.

In sentencing a defendant, the trial court is required to consider the following: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114; (6) any statistical information provided by the Administrative Office of the Court as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210 (2010).

It remains "critical" that a trial court adhere to the statutory requirement set forth in Tennessee Code Annotated section 40-35-210(2), which requires a trial court to place on the record what enhancement or mitigating factors it considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing. *Bise*, 380 S.W.3d at 705 n.41. The burden falls to the appealing party to show that the trial court's sentence is somehow improper. T.C.A. § 40-35-401(d), Sentencing Comm'n Cmts. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence, however should not negate the presumption" of reasonableness in the trial court's sentencing decision. *Bise*, 380 S.W.3d at 706. As a result, "[a]n appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008).

In imposing the defendant's sentence, the trial court made the following findings on the record:

> In determining the appropriate sentence for this offense, the Court has considered the evidence presented here today as well as the evidence presented in the form of the factual stipulation at the plea on October the 2nd. I have reviewed the Pre-Sentence Report, the Principles of Sentencing, and arguments made as to the Sentencing Guidelines, the nature and characteristics of the criminal conduct involved, the evidence and information offered by the parties, and your argument as to any mitigating and enhancing factors, as well as prior to convening the hearing here today, I did once again review statistical information that was provided by the Administrative Office of the Courts as to sentencing practices for similar offenses such as this throughout the State.
>
> The defendant did not make a statement here today; however, I have

reviewed the statement he made to Michael Caldwell of the Board of Probation and Parole in conjunction with the Pre-Sentence Investigation Report. . . .

By agreement, and the record is clear that the defendant is a Range I, standard offender. Based upon the proof that's been presented here today and listening to argument - - well, let me just state for the purposes of the record and for those all involved in the case. Sentencing in the State of Tennessee is dictated by statute and it is dictated by the Sentencing Guidelines that would have been handed down by our legislature, and the Court is bound by those Sentencing Guidelines. And it is difficult, if you're sitting on either side of a case such as this, to understand that the Court is bound by Sentencing Guidelines.

And while I do appreciate the care and the consideration that [the victim's] family members have as to her potential age for when the defendant is released from prison, the legislature has not provided that to be a factor in which I can consider in making the determination here today. . . . I understand the situation. I appreciate your words, but I need to be very clear for the purposes of the record, that request is not something with which I can legally base a decision here today. The Court is bound by enhancing and mitigating factors in determining the length of the sentence.

. . . .

In looking through the enhancing factors under 40-35-114, No. (1) includes that the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. [The defendant] at the time that this report was filed with the Court on November the 6th, 2012, was twenty-four years old, and has, according to the Pre-Sentence Report, a conviction for a Class A Misdemeanor, possession of paraphernalia . . . . He has given information to the pre-sentence officer of drug use.

Sometimes the Court, and as I'm sure the assistant district attorney and [defense counsel], we find ourselves here on a day-to-day basis with individuals in court with a variety of criminal histories. And so in comparison maybe to those that we normally deal with, [the defendant] does not have as an extensive a history as we sometimes see. However, the Court does not believe then just because it's not extensive that it should not be ignored - - I mean, that it should be ignored. It is significant that he has a prior conviction for a Class A Misdemeanor and that he has engaged in some drug use that would constitute criminal behavior. So the Court does find that Enhancing Factor No. (1) does apply. However, given

-6-

the nature of the offenses, the Court at this time is not going to give that as great of weight as [what] we give to No. (14), the private trust factor.

. . . .

No. (14) of the enhancement factors states, The defendant abused a position of public or private trust, or used a professional license in a manner that significantly facilitated the commission or the fulfillment of the offense. The Court is charged with giving weight to the factors, and the Court does find, as well as [defense counsel] did concede, that No. (14) does apply in that [the defendant] was the stepfather of [the victim] at the time that the offense did occur. The Court does find in this particular situation and gives that factor great weight, in that this crime could not have been accomplished, based upon the testimony that was presented here today as well as when the Court took the statement and recitation of facts back in October, that this could not have happened but for the position of private trust in that he was her stepfather and had access to this child that he would not otherwise have had access to. Also, that he used that position of trust to accomplish the crime itself.

I also note for the record, the impact that that position of trust and the violation of that position of trust, obviously that was a significant factor in the commission of this crime given the impact that the Court has heard proof as to the impact it's had on [the victim]: her issues with counseling, her issues with fear, her issues including not wanting to drive by his place of work, seeing a van that is similar to his work van. And then I also find that it is significant that his role of stepfather was such that, according to the great grandmother's testimony, [the victim] called him daddy. So the Court does place great weight upon that enhancing factor because the Court does believe, but for that position of trust, this crime would have never been able to happen.

In looking then at the mitigating factors [defense counsel] has argued, No. (1), that the criminal conduct neither caused nor threatened serious bodily injury. I do understand the argument, . . . but at this time, the Court does not feel that there's just simply not enough proof in the record for the Court to really find that this is significant enough under these circumstances to find that it does mitigate given not just the nature of the crime but simply the statements and really the lack - - the Court is provided sometimes with minimal information when they don't try the case and we're here for sentencing purposes. I just simply cannot find based upon the evidence that's been presented here today that . . . to be a mitigating factor.

I will note that, as General Frazier has pointed out, apparently, despite Detective Seratt's testimony, that the defendant did for all intensive purposes given an admission as to the crime of aggravated sexual battery, the Pre-Sentence Report does note that he, for lack of a better work, is denying that now and states that that was only because he'd been in an interview for two and a half hours, had failed a polygraph, and had been told that he faced more serious charges.

. . . .

So the Court is going to base its decision by giving weight, but small weight to Factor No. (1), great weight to Factor No. (14). In the specifics and the circumstances of this case, the Court does find at this time that it is appropriate under the law, the proof presented, and the Sentencing Guidelines in their totality, at this time that [the defendant] be sentenced to serve twelve years in the Tennessee Department of Correction[].

Again, the defendant pled guilty to aggravated sexual battery, a Class B felony. There is no dispute in the case that the defendant was a Range I offender. As such, the possible sentencing range for the defendant was eight to twelve years. *See* T.C.A § 40-35-112(a)(2). Thus, the twelve-year sentence imposed by the trial court was within the permissible range. Consequently, we begin with the presumption that the sentence is reasonable.

The defendant does not contest application of any specific enhancement factor nor the failure to apply certain mitigating factors; rather, he argues only that the sentence is not consistent with the purposes and principles of the Sentencing Act. We agree that no error was committed by the trial court in application of the two enhancement factors. The pre-sentence report did contain a prior drug paraphernalia conviction, as well as statements from the defendant himself acknowledging other drug usage. The trial court correctly determined that the factor of prior criminal history or behavior was applicable, although affording it little weight. Likewise, the record is clear that the trial court appropriately applied factor 14 regarding the abuse of a position of private trust. In fact, defense counsel conceded at the sentencing hearing that this factor was appropriate. We concur based upon the relationship between the defendant and the victim.

The defendant has presented nothing to this court on appeal which rebuts the presumption of reasonableness afforded the trial court's sentencing determination. The trial court, in its very detailed findings, noted it was considering all required principles of sentencing and the evidence presented in the case. The defendant, who presented no evidence, merely states a bare conclusion that the trial court erred, but he fails to allege how the purposes and principles of the Sentencing Act are not served by this sentence. His

contention that because this conviction requires lifetime community supervision and mandatory incarceration of 100%, he would face a lengthy incarceration even with the minimum sentence and be very unlikely to be ever be placed in a position of supervision over children for the rest of his life does not rebut the presumption of reasonableness to which the trial court is entitled. Nor has he shown entitlement to relief simply because he had no prior felony convictions, admitted, although later recanted, his crime, and pled guilty. The trial considered all the appropriate factors and imposed sentence based upon its weighing of those factors. On this record, we conclude there is no abuse of discretion in the sentencing determination. The defendant has failed to carry his burden and is entitled to no relief.

## CONCLUSION

Based upon the foregoing, the twelve-year sentence imposed by the Blount County Circuit Court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE